UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CATHAY BANK,

                    Plaintiff,      REPORT AND RECOMMENDATION

           - against -

                                      06 Civ. 15445 (LTS) (RLE)

YOUNG HO SEO, et al.,

                    Defendants.

------------------------------------------------------------

**To the HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:**

## I. INTRODUCTION

On December 26, 2006, Cathay Bank ("Cathay"), brought this action to collect on obligations created by guaranties entered into by Defendants Young Ho Seo ("Seo"), S & C Market, Inc. ("S & C Market"), and Ahns Mark, Inc. d/b/a Valley Supreme Supermarket ("Valley Supreme"). (Pl.'s Mem. of Law for Default ("Pl.'s Mem.") at 1, Aug. 29, 2007.) After all Defendants failed to answer Cathay's Complaint, the Honorable Laura T. Swain entered a default judgment against them, and referred the matter to the undersigned to conduct an inquest into damages, interest, attorney's fees, and costs.

For the following reasons, the Court recommends that Plaintiff be awarded judgment against Defendants as follows: (1) $289,805.01 in damages, inclusive of interest through December 16, 2009; (2) $15,753.80 in attorney's fees and costs; and (3) post-judgment interest pursuant to 28 U.S.C. § 1961(a).

## II. BACKGROUND

On March 5, 2004, Great Eastern Bank ("Great Eastern"), formerly a New York State chartered bank and Cathay's predecessor-in-interest, entered into a business loan agreement with Shop Fresh, LLC ("Shop Fresh"), a now defunct Connecticut grocery business. (Pl.'s Aff. for Default ("Pl.'s Aff.") at 2, Aug. 29, 2007.) Shop Fresh executed and delivered a promissory note for a loan ("Shop Fresh Loan") in the amount of $250,000, payable to Great Eastern with an initial interest rate of 6.5% per year. (*Id.*; Pl.'s Aff., Ex. A at 1.) The loan was secured by commercial guaranties entered into by Seo, S & C Market, and Valley Supreme. Each commercial guaranty provided an unlimited, absolute, and unconditional guaranteed repayment of any indebtedness of Shop Fresh to Great Eastern. (Pl.'s Aff. at 3, Exs. B, C, and E.) S & C Market and Valley Supreme also entered into separate security agreements providing Great Eastern with a security interest in all personal property and fixtures up to Shop Fresh's entire indebtedness. (Compl. at 4-5.)

Shop Fresh was forwarded the entire loan sum on March 5, 2004, with repayment due in 84 monthly payments of $3,724.24. (Pl.'s Aff., Ex. A at 1.) Pursuant to the promissory note, Shop Fresh was obligated to begin repayment on April 5, 2004, and to continue payments on the fifth day of each month thereafter. (*Id.*) According to Frank Chan, current vice president of Cathay Bank, the last payment on the Shop Fresh Loan was made in November 2005. (Affidavit of Frank Chan ("Chan Aff.") at 2, Aug. 8, 2009.) Upon Shop Fresh's default, the entire indebtedness to Great Eastern became due for each guarantor. In May 2006, Great Eastern was merged into Cathay and, as the surviving corporation, all the debts and liabilities owed to Great

Eastern were transferred to Cathay. Cathay seeks to enforce each guaranty except the security agreement entered into with Valley Supreme.[1] (Pl.'s Aff. at 6-8.)

Because Defendants failed to answer, on October 29, 2007, District Judge Swain found that the default by Defendants was an admission of all well-pleaded allegations in Cathay's Complaint except those relating to the amount of damages. (Order Granting Mot. Def. J., Oct. 29, 2007.) Judge Swain subsequently found that the evidence presented by Cathay, including affidavits, the promissory note, the business loan agreement, copies of the commercial guaranties, copies of the commercial security agreement, and the UCC financing statement were sufficient to establish Defendants' breach of their commercial guaranties, and the existence of a security interest in S & C Market's property. (*Id.* at 2.) The matter was referred to the undersigned on October 29, 2007, to ascertain the amount of damages. (Referral Order, Oct. 29, 2007.)

On August 29, 2007, Cathay sought a judgment against the Defendants in the amount of $304,103.82, as well as a judgment against S & C Market enforcing Cathay's security interest and lien in all property and fixtures. (Pl.'s Aff. at 6-8.) On August 7, 2009, Cathay amended its damage request to $313, 249.89 to account for the interest accrued since August 29, 2007, and withdrew its claim to enforce the lien against S & C Market. (Chan Aff. at 2-3.) Both affidavits in support of damages incorporate the following requests: attorney's fees of $22,721.48 in connection with the default judgment proceedings, service of process expenses of $256.15, filing fees of $350, and an estimated $5,600 in post-judgment collection expenses. (Attorneys' Aff. of

---

[1] Cathay's security interest in Valley Supreme collateral was extinguished upon the filing of a termination statement. (Pl.'s Mem. at 3; Order Granting Motion for Default Judgment ("Order") (Doc. No. 26) at 3.)

Costs and Fees ("Attorneys' Aff.") at 1-2, 8, Aug. 28, 2007.) Cathay also seeks attorney's fees of $15,468.65 in connection with the Shop Fresh bankruptcy, the calculation of which is not present in any submitted document. (*Id.*)

The Court held a conference in this case on November 15, 2007, at which Defendants did not appear despite an order from this Court. (Order, Doc. No. 27, Nov. 9, 2007.) Also, counsel for Plaintiff indicated that she had sent notice of the conference to Defendants via Federal Express. On November 21, 2007, the Court ordered Plaintiff to send a copy of its Notice of Motion for Default Judgment and supporting documentation to Defendants by November 30, 2007, and further ordered Defendants to respond to Plaintiff's submission on the issue of damages by December 17, 2007 (Doc. No. 28.) Additionally, the Court mailed the November 21, 2007 order and the Notice of Motion to Defendants' at the addresses that were on file with the Court. Plaintiff complied with that order, but Defendants made no submission to the Court.

On June 22, 2009, the Court ordered Plaintiff to submit additional documentation in support of its assertions regarding the amount of damages. Specifically, the Court highlighted the following issues: (1) the calculation of the total principal and interest due; (2) the nature of the default under the note; and (3) the calculation of attorney's fees. (Order Requesting Additional Documentation on Damages, Jun. 22, 2009.) In response, Plaintiff submitted an affidavit regarding the calculation of attorney's fees on August 6, 2009. (Affidavit of Joyce H. Young, Esq., ("Young Aff.") at 3, Aug, 7, 2009.) Plaintiff submitted an affidavit accompanied by three exhibits on August 7, 2009, in reference to the nature of the default under the Note, and the calculation of the total principal and interest due. (Chan Aff., Exs. A, B, and C.)

### III. DISCUSSION

A.	**Standard for Default Judgment**

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, a party may move for a default judgment against an adversary who fails to answer or appear. Fed. R. Civ. P. 55(b). Except those pertaining to damages, all well-pleaded factual allegations in the complaint are accepted as true once a default judgment is entered. *See Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993) (citing *Au Bon Paint Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)); *Coated Fabrics Co. v. Mirle Corp.*, 06 Civ. 5415 (SJ), 2008 WL 163598, at *4 (E.D.N.Y. Jan. 16, 2008). A factual allegation will be deemed not well-pleaded only in "very narrow, exceptional circumstances." *Verizon Directories Corp. v. AMCAR Transp. Corp.*, 05 Civ. 8867 (GBD) (RLE) 2008 WL 4891244, at *2 (S.D.N.Y. Nov. 12, 2008) (citing *TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc.,* 03 Civ. 0517 (GBD) (RLE), 2005 WL 2063786, at *2 (S.D.N.Y. Aug. 16, 2005)).

The district court must conduct an inquest in order to determine the amount of damages with reasonable certainty, and it may make such determination without a hearing, "as long as it [has] ensured that there is a basis for the damages specified in the default judgment." *TMS Entm't Ltd. v. Madison Green Entm't Sales, Inc.,* 03 Civ. 0517 (GBD) (RLE), 2005 WL 2063786, at *2 (S.D.N.Y. Aug. 16, 2005) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Specifically, this Court must determine the proper rule for calculating damages on the claim, which may or may not include a hearing on the matter, and determine whether Cathay's evidence sufficiently supports the damages to be determined under that rule. *Id.* (referencing *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Accordingly, the Court may rely on Cathay's affidavits or documentary evidence in

5

determining the reasonableness of the damages requested. *Id*. (referencing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993)). Here, the allegations in the Complaint and the entering of a default judgment support a finding that Defendants are each liable for breach of commercial guaranty and that an enforceable security guaranty exists against S & C Market for the total indebtedness owed Cathay, including principal, interest, attorney's fees, and costs (Pl.'s Aff., Ex. D at 1, 6.)

**B.  Computation of Damages**

Damages for breach of contract are determined by calculating the "amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Trans Atlantic Airlines, Inc. v. Kambi Travel Int'l*, 05 Civ. 2552 (RLE), 2006 WL 1317024, at *1 (S.D.N.Y. May 12, 2006) (citing *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995); *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 92 (2d Cir. 1984)). *See also TMS Entm't Ltd.*, 2005 WL 2063786, at *3. Additionally, under New York law, where the breach of contract was a failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract plus interest. *See Scavenger, Inc. v. GT Interactive Software Corp.*, 289 A.D.2d 58, 58-59 (N.Y. App. Div. 2001).

Defendants executed guaranties promising to reimburse Cathay for any outstanding balance remaining on the Shop Fresh Loan upon default. The outstanding balance for the Shop Fresh Loan was $207,784.40. (Chan Aff., Ex. A at 1.) Additionally, the loan provides for interest upon default to be assessed at Cathay Bank's index interest rate plus four percent. Cathay's Bank rate is the variable index rate (i.e. U.S. Prime rate). (Chan Aff. at 2 ¶ 7.) The interest rate fluctuated between 7.25% and 12.25% from the loan default in November 2005 through August 7,

2009, the date of Chan's affidavit. (Chan Aff., Ex. B, C.) Based on Plaintiff's submissions, Cathay is entitled to recover $76,537.86 in interest through August 7, 2009, making the principal plus pre-judgment interest as of August 7, 2009, $284,322.66.[2] (Chan Aff., Ex. C.) The Court calculated the interest accrued between August 7, 2009, and December 16, 2009, by applying the per diem rate of $41.85[3] and multiplying it by 131, the number of days elapsed. The total interest for this period equals $5,482.35. Thus the total principal plus pre-judgment interest as of December 16, 2009 is $289,805.01.

### C. Attorney's Fees and Litigation Costs

Cathay seeks an award of attorney's fees and legal costs in the amount of $15,468.65 in connection with the Shop Fresh bankruptcy through July 10, 2007; attorney's fees and legal costs in the amount of $23,327.63 in connection with the default judgment action through July 31, 2007; and an estimated $5,600 in post-judgment collection expenses. (Pl.'s Aff. at 6; Attorneys' Aff. at 2.) According to the promissory note, Shop Fresh was obligated to reimburse Cathay for all reasonable attorney's fees and legal expenses related to collection under default and bankruptcy proceedings. (Pl.'s Aff., Ex. A at 2.) Defendants became liable for these expenses pursuant to the loan guaranties. (Pl.'s Aff., Ex. B-E.)

The Second Circuit has used a two-step approach for calculating attorney's fees. First, a court must multiply "the number of hours expended by each attorney involved in each type of

---

[2] The amount calculated from the per diem rate in Exhibit C of Chan's Affidavit is forty cents more than the amount requested in ¶ 8 of Chan's Affidavit. Because the chart in Exhibit C gives the outstanding balance as of August 4, 2009, the Court calculated the interest accrued between August 4, 2009, and August 7, 2009, by applying the per diem rate of $41.85 and multiplying it by 3, the number of days elapsed. This amount, $125.55, was added to the balance due on August, 4,2009, ($125.55 + $284,197.11) and totals $284,322.66.

[3] The per diem rate is taken from Chan's Affidavit and reflects Cathy's Index rate plus four percent. (Chan. Aff., Ex. C.)

work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area." *Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 505 (2d Cir. 1980) (quoting *Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977)). As the second step, a court may evaluate the lodestar figure and adjust it "upward or downward to take account of such subjective factors as the risk and complexity of the litigation and the quality of the representation." *Id*.

When evaluating attorney's fees, the Second Circuit employs a "presumptively reasonable fee" standard. *AW Industries, Inc., v. Sleep Well Mattress, Inc.,* No. 07-CV-3969 (SLT) (JMA) 2009 WL 485186, at *5 (E.D.N.Y. Feb. 26, 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)). In finding the "presumptively reasonable fee," this Court considers what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. *Id*. at *5 (internal quotations omitted). This "presumptively reasonable fee" is achieved by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate. *Microsoft Corporation v. Computer Care Center, Inc.*, No. 06 Civ. 1429 (SLT)(RLM), 2008 WL 4179653, at *14 (E.D.N.Y. Sept. 10, 2008). Courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of hours spent and rates charged in a given case." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

**1. Hourly Rate**

Cathay Bank is represented in this case by Ivey, Barnum & O'Mara, LLC ("Ivey Barnum"). (Young Aff. at 1.) The primary attorney handling this action is Young, of counsel to Ivey Barnum. (*Id*.) Young billed at a rate of $350 per hour. (*Id*. at 2.) The other Ivey Barnum

attorneys involved in this action are bankruptcy partner, Melissa Neier, who billed at $385 per hour, and associate, Kent Kolbig, who billed at $245 per hour. (*Id.*) A paralegal also worked on the case, and billed $115 per hour. (Attorneys' Aff. at 2.) Ivey Barnum's rates in this case are not unreasonable in light of hourly rates approved by this Court. *See, e.g., Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (deeming hourly rates of $425 for a senior partner, $300 for associates, and $150 for a paralegal as reasonable); *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 5002 (JSR), 2005 WL 2063819, at *4 (S.D.N.Y. Aug. 24, 2005) (accepting $395 to $485 for partners, $180 to $265 for associates, and $60 to $145 for paralegals).

**2. Hours Expended**

In an application for attorney's fees, the "burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987). A court must adjust attorney's fees with "excessive, redundant or otherwise unnecessary" hours. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). A court can also reduce attorney's fees for "vagueness, inconsistencies, and other deficiencies in the billing records." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir.1998)

**a. Vague Entries**

Records with insufficient detail "cannot be evaluated for reasonableness and therefore cannot be compensated." *Ursa Minor Ltd. v. Aon Financial Products, Inc.*, No. 00 Civ. 2474, 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001). In such a case, fee reductions are an appropriate penalty. *See Ragin v. Harry Macklowe Real Estate Co.* 870 F. Supp. 510, 520 (S.D.N.Y. 1994) (fees reduced in part because of vague entries such as "telephone call to S.

Berger," "Review Macklowe files," "conference with T. Holman," and "Telephone conference");
*PSG Poker, LLC v. DeRosa Grund*, No. 06 Civ. 1104 (DLC)(JCF), 2008 WL 2755835, at *4 (S.D.N.Y. July 14, 2008). Similarly, Cathay's counsel presents records comprised of brief and vague entries, making it impossible to discern whether entries such as "Research," "E-mail," "Conference," or "Correspondence" refer to anything meaningful. The Court is unable to determine the reasonableness of the tasks referenced.

### b. Excessive Hours

"[W]hen there is a fee application containing excessive hours, it is within the discretion of the district court to make an across the board percentage reduction." *LaBarbera v. J.E.T. Res., Inc.*, 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005). For this case, where Defendants failed to appear, no novel issues of law were considered, and few legal documents were prepared, a total of 177 hours billed is exorbitant. *See AW Indus., Inc. v. Sleep Well Mattress, Inc.*, No. 07 Civ. 3969 (SLT) (JMA), 2009 WL 485186, at *5 (E.D.N.Y. Feb. 26, 2009) (reducing attorney's fees for a default judgment case by one-third because it is "incredible that over 100 hours were expended" on a "straightforward" case); *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, No. 05 Civ. 10100 (KMW) (KNF), 2008 WL 2485407, at *9 (S.D.N.Y. June 18, 2008) (reducing attorney's fees for a default judgment case by 75% because it was "incredible that 95.1 hours were expended" on a "straightforward" case).

### c. Block Billing

Fees may also be reduced when parties engage in "block billing," where parties combine multiple tasks into one entry thereby " 'imped[ing] the court's efforts to evaluate the reasonableness of any of the listed activities.' " *Bobrow Palumbo Sales, Inc. v. Broan-Nutone,*

*LLC*, 549 F. Supp. 2d 274, 283 (E.D.N.Y. 2008) (internal quotations omitted). Courts have routinely used across the board percentage cuts as a penalty for block billing. *See Skold v. Am. Int'l Group, Inc.,* No. 96 Civ. 7137 (HB), 1999 WL 672546, at *2 (S.D.N.Y. Aug. 25, 1999) (10% reduction for block billing); *Commission Express Nat'l v. Rikhy*, 03 Civ. 4050, 2006 WL 385323 (CPS), at *5 (10% reduction for block billing); *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 213 (S.D.N.Y. 2001) (12% reduction for block billing). Examples of block billing in Plaintiff's attorneys' affidavit include: "Review Complaint; Office Conference; Research; Draft Report 2.00 hrs."; "Research; Draft Pleadings; Office Conference 4.20 hrs."; "Research; Draft Pleadings; Office Conference 2.80 hrs."(Attorneys' Aff. 2-3.) Such block entries make it impossible for this Court to determine the reasonableness of the time allocated to each of these activities. This Court holds that such block billing warrants a fee reduction.

### d. Lack of Records

Cathay "has the burden of producing contemporaneous time records that 'specify, for each attorney, the date, the hours expended, and the nature of the work done,' so the Court can audit the hours and determine whether they were reasonably expended." *King v. JCS Enters*., Inc., 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (quoting *New York State Ass'n for Retarded Children, Inc.*, *v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Thus, to determine whether the attorney's fees requested are presumptively reasonable, the Court must consider the documented tasks and time spent on the tasks. *See Wise v. Kelly*, No. 05 Civ. 5442 (SAS) (THK), 2008 WL 482399, at **4 (S.D.N.Y. Feb. 21, 2008) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)); *ISM Sports v. Lemonia Gyro & Souvlaki*, No. 04CV2333ARRRML, 2005 WL 1861308, at *1 (E.D.N.Y. July 28, 2005) (declining "to award attorney's fees in light of plaintiff's failure to

provide the necessary documentation in a timely manner"). Besides the $23,327.63 of attorney's fees and costs in connection with the default action, Cathay also requests $15,468.65 in attorney's fees, legal costs, and expenses in connection with the Shop Fresh bankruptcy through July 10, 2007. (Pl.'s Aff. 6-8.) Cathay asserts that they are entitled to the recovery of the $15,468.65 in connection with the Shop Fresh bankruptcy under the terms of the Shop Fresh Promissory Note. (Young Aff. at 3.) However, records indicating how these fees were accumulated are absent from the Attorney's Affidavit. Thus, Cathay has failed to carry its burden to show why they are owed $15,468.65 in attorney's fees in connection with the Shop Fresh bankruptcy, and I recommend the request be denied.

### e. Billing Errors

Courts have used percentage cuts "as a practical means of trimming fat from a fee application." *NYSARC v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983); *see DeVito v. Hempstead China Shop., Inc.*, 831 F. Supp 1037, 1045 (S.D.N.Y. 1993) (40% reduction for duplicative entries, insufficient descriptions of work done); *Ragin v. Harry Macklowe Real Estate Co*. 870 F. Supp. 510, 520-521 (S.D.N.Y. 1994) (30% reduction for numerous entries with insufficient descriptions, duplicative billing errors, and errors throughout the record). In the present case, there are two notable errors. First, according to the Attorneys' Affidavit, Neier billed 45.7 hours, Kolbig billed 53.3 hours, and Young billed 78 hours. (Attorneys' Aff. at 2-8.) The total attorney's fees according to these numbers should be $58,217.50, rather than the $22,721.48 requested. Second, the Attorneys' Affidavit lists the month of November twice, resulting in a duplicate entry of $7,042.00, or 19.9 hours. (Attorneys' Aff. at 2-3.) Besides providing the name and type of

experience for each of the three attorneys, the Young Affidavit, which was Cathay's response to the Court's Order Requesting Additional Documentation on Damages (Jun. 22, 2009), did not clarify the discrepancies in the attorneys' first submission in support of cost and fees. As a result of the affidavit's vagueness, absence of contemporaneous records, block billing, and duplicative billing errors, the Court recommends Cathay's requested attorney's fees of $22,721.48 be reduced by 30%. Thus, a total of $15,147.65 in attorney's fees should be awarded. Additionally, Cathay's request for litigation costs totaling $606.15 are reasonable and should be awarded in full. (Attorneys' Aff. at 1 ¶ 3.)

### f. Anticipated Costs

Cathay also seeks $5,600 in anticipated collection costs, consisting of sixteen hours of attorney time at $350 per hour. The promissory note provides that Cathay is owed all expenses required to collect under the note. (Pl.'s Aff., Ex. A at 2.) However, Cathay offers no evidence that this provision requires the Court to speculate about the future expense of collecting damages from Defendants. *See Joy v. North*, 692 F.2d 880, 898 (2d Cir. 1982) (noting that future attorney's fees are "inherently speculative costs"). Future fees cannot be substantiated by contemporaneous billing records, *see Carey*, 711 F.2d at 1148, and the Court has no basis, and no authority, to predict what costs may be expended to collect the damages awarded and will not do so. *See Entral Group Intern., L.L.C. v. New York One Café Inc.*, No. 05 Civ. 1655 (CPS), 2007 WL 869587, at *11 (E.D.N.Y. Mar. 20, 2007) (noting the lack of "legal authority for the proposition that the Court may make an award for as yet unincurred fees").

### D. Post-Judgment Interest

According to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money

to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, 500 Pearl Street, Room 755, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: December 16, 2009**
**New York, New York**

                **Respectfully Submitted,**

                */s/ Ronald L. Ellis*

                **The Honorable Ronald L. Ellis**
                **United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

For Defendants
Young Ho Seo
161 Eagle View Drive
Southbury, CT 06488

S & C Market, Inc.
37 Wallkill Avenue
Wallkill, NY 12589

Ahns Mark, Inc. d/b/a
Valley Supreme Supermarket
302 Veterans Circle
Walkill, NY 12589

For Plaintiff
Joyce Hannah Young
Ivey, Barnum & O'mara, LLC
170 Mason Street
Greenwich, CT 06830

14